

**FILED**

JUN 0 3 2008

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| BRITTANY ANN PLAMP, | * | CIV. 07-4009 |
|  | * |  |
| Plaintiff, | * |  |
|  | * |  |
| -vs- | * | MEMORANDUM OPINION AND |
|  | * | ORDER RE DOCS. 140, 143 & 183, |
| MITCHELL SCHOOL DISTRICT NO. 17-2, | * | 147, AND 149 |
|  | * |  |
| Defendant/Third-Party Plaintiff, | * |  |
|  | * |  |
| -vs- | * |  |
|  | * |  |
| ANDREW TATE, | * |  |
|  | * |  |
| Third-Party Defendant. | * |  |
|  | * |  |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## BACKGROUND

Brittany Ann Plamp sued the Mitchell School District No. 17-2 (District)(Doc. 75).

Mitchell School District as third party plaintiff sued Andrew Tate as third party defendant (Doc.

77). Plamp asserts three theories of recovery against District (Doc. 75):

- Title IX, 20 U.S.C. § 1681(a) (sexual harassment/discrimination)
- Battery (vicarious liability for Tate's misconduct who was acting within the scope of his employment)
- Deprivation of Constitutional Rights under § 1983 (policy or custom of ignoring complaints; failure to train)

District answered Plamp's complaint alleging (Doc. 100):

- Sovereign immunity (court lacks jurisdiction)
- District's actions fall within Tenth Amendment the U.S. Constitution
- Plamp's complaint fails to state a claim upon which relief can be granted.
- Denies Plamp's allegations except those specifically admitted

1

- Asserts Affirmative Defenses in ¶¶ 12 through 21:
    12.    Sovereign immunity
    13.    Tenth Amendment
    14.    Failure to state a claim upon which relief can be granted
    15.    Denies the nature and extent of injuries
    16.    Denies liability for Tate's alleged harassing behavior under respondeat superior or vicarious liability or constructive notice
    17.    Denies liability for Tate's alleged criminal act of battery under respondeat superior or vicarious liability or constructive notice.
    18.    District had no actual notice of Tate's alleged behavior and had no opportunity to respond
    19.    District was not deliberately indifferent
    20.    Tate is liable to District for any amount District is liable to Plamp
    21.    District is entitled to contribution from Tate in a percentage to be determined by the fact finder

District alleges against Tate (Doc. 77):

- Failure to Report (as required by State law)
- Failure to Comply with Policy (Tate's conduct as alleged by Plamp was contrary to Distrit's policies)
- Contribution (District's liability, if any, is only as a result of Tate's actions)
- Employment Misconduct (Tate willfully violated his obligation to his employer, the District)

Tate answered District's third party complaint alleging (Doc. 83):

- Failure to state a claim upon which relief can be granted
- Denies every allegation except as specifically admitted
- Asserts affirmative defenses in ¶¶ 18 through 20:
    18.    Counts I, II and IV of the third party complaint are barred for lack of standing
    19.    There is no private right of action for failure to report, failure to comply with policy, and employment misconduct
    20.    In the event of Plamp's recovery of damages, Tate is responsible for only such damage as is proportionate to his degree of fault under SDCL 15-8.

Pending are the following motions:

- Tate's motion for partial summary judgment (Doc. 140) (regarding District's claim for contribution from Tate for District's Title IX liability to Plamp because South Dakota's joint tortfeasor statute does not apply; also because there is no legal theory upon which relief can be granted for violation of a reporting statute,

2

employee misconduct, or violation of the sexual harassment policy)
- District's motion for hearing (Doc. 143 & 183) (the parties agree this is a Daubert motion challenging the admissibility of opinion testimony from Plamp's expert; this is also a motion attacking plaintiff's punitive damage claim)
- District's motion requesting *in camera* review of statements (Doc. 147) (this is a discovery motion to compel Plamp to produce to District notes of interviews conducted by Plamp's lawyers and investigator)
- District's motion for summary judgment (Doc. 149)

## JURISDICTION

Plaintiff asserts jurisdiction pursuant to 20 U.S.C. § 1681(a), 28 U.S.C. §§ 1331 and 1343 and 43 U.S.C. § 1983. Supplemental jurisdiction over state law claims exists pursuant to 28 U.S.C. § 1367(a).

## MITCHELL SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT (DOC. 149)

### 1.    UNDISPUTED FACTS

The School District has received federal financial assistance. Brittany Ann Plamp was a high school student at Mitchell School District in 2005-2006. Andrew Tate was a teacher in the District. Tate was Plamp's teacher for one semester of American Government from January through May of 2006.

In late January or early February of 2006 Tate commented to Plamp about her anorexia and also made comments of a sexual nature. Plamp informed her mother in February 2006 about the sexual comments. Mother was disgusted and referred to Tate as a sick pervert for having made the comments. Mother knew and believed at that time that Tate's comments were inappropriate, but decided not to report them to the District.

In March 2006 Tate put his arm around Plamp. She felt that was weird. In April 2006

3

Tate told Plamp she had a knock-out body.  She felt it was very disturbing for a teacher to say

that.  She discussed with her mother on at least two separate occasions whether to report Tate's

sexual comments to school officials, but did not do so.  Mother informed her husband, Plamp's

father, about Tate's sexual comments.  Mother and father discussed on at least two occasions

whether to report Tate's sexual comments to the school, but decided not to do so.  Plamp and her

father spoke about Tate's sexual comments before May 9, 2006, perhaps as many as three times.

On May 9, 2006, Plamp went to Tate's classroom about 7:30 a.m.  They discussed her

eating disorder and treatment.  Tate touched Plamp.  The extent of the touching is disputed.  Tate

knew the conversation was one they should not be having.

On May 11 Plamp told her mother about the May 9 details.  On May 11 mother called Dr.

Graves, the superintendent of the School District.  Before this conversation school District's

administration was not aware of any sexually inappropriate incidents between Tate and Plamp.

Graves told mother the May 9 incident could be investigated by the school or by law

enforcement.  He recommended that law enforcement be notified immediately.  Mother called

the police.  Graves called the police himself as soon as he finished his conversation with mother

about the May 9 incident.  At that time Tate was returning to Mitchell with the high school golf

team that he coached.  Graves instructed two other administrators to stay at the high school and

wait for Tate's return to ensure he would have no more student contact at that time and when he

left the school.  They remained in the office and watched Tate's return via security cameras.

They observed all the golf team members leave.  Tate was interviewed at the police station by the

police on May 11.  Graves observed the interview through a camera system.  Graves told Tate he

was suspended until the matter was resolved immediately following Tate's police interview.

4

Tate was escorted to the school by police and Graves so Tate could gather some things. Graves told Tate on June 7, 2006, there was no way Tate could return to his teaching position with the District.

Before the Plamp incidents there had been other student complaints about Tate, namely his classroom description of British soldiers raping women during the American Revolution, calling a male student an inappropriate slur, leaving the classroom, using a cell phone during class and excessively using a computer during class.

The District has sexual harassment policies. The District has a student grievance procedure policy. The student handbook is reviewed with each class at the beginning of each school year. The student handbook contains sexual harassment sections. Staff members are given the District's sexual harassment policy in the staff handbook at the beginning of each school year. There is a fall in service meeting at the beginning of each school year. It is seven days in length for new employees and two days in length for returning employees. Staff has had many workshops about sexual harassment, including at least one full day of training about sexual harassment. Students received training in 2004, 2005, and 2006 about sexual harassment. They were told to report sexual harassment. The District sends Title IX coordinators to sexual harassment training for training specific to being a coordinator.

## 2.    Additional Facts Stated in the View Most Favorable to Plaintiff.

During the May 9 incident Tate lifted Plamp's shirt while rubbing her belly up to her breast line. Her bra was exposed to Tate. He helped her pull down her gaucho pants exposing her underwear and commented about her underwear while grabbing her buttocks with both hands. He asked her about her breast size. He told her not to tell her mom, dad, boyfriend, or

5

anyone else.  He commented to her on multiple other occasions that she had a "knock-out body"
and "he had to look at her twice."

Plamp identifies three prior incidents involving other persons in which complaints were
made about Tate:

- In the early to mid 1990's an anonymous male complained to Guidance Counselor Judy
  Thiesse.  Thiesse testified she was told that "he and his fiancé were having sexual
  problems and that he suspected it was because of Tate's sexual relationship with his
  fiancé when she was his student."  Thiesse referred him to then high school Principal
  Aslesen.  Aslesen testified he met with the young man.  The young man wanted a teacher
  fired, but the young man would not give his own name, the name of the teacher he wanted
  fired, or any details about the reasons to fire the teacher.  Plamp contends Aslesen's
  testimony contradicts Thiesse's testimony.  According to Thiesse the young man returned
  to Thiesse a short time later and said he wasn't going to do anything if the school
  wouldn't stand behind him. Plamp asserts District's explanation for the outcome is
  inherently incredible.

- In school year 2002-2003 a female student complained to Thiesse about feeling
  uncomfortable in Tate's classroom.  Thiesse referred the student to Principal Palli.
  Thiesse and Palli discussed the situation.  The complaint was not documented.  Thiesse
  and Palli do not recall the name of the student.  The subject was not documented in Tate's
  personnel file.  The complaint was not discussed with Tate.

- In school year 2004-2005 female student Ellis described situations to Thiesse that made
  her, as a female student, feel uncomfortable in Tate's classroom.  She complained after

6

experiencing nightmares and screaming in her sleep.  She was crying, shaking, and upset when she told Judy Thiesse.  Thiesse referred her to Principal Palli.  Palli denies a meeting occurred between her and the student and does not remember the student complaining about Tate.  The female student testified that Palli approached Tate and told him not to be so graphic in his classroom when describing certain historical accounts of rapes.

None of these three incidents was documented.  Plamp contends District's policy requires that all reports of sexual harassment should be documented and investigated.

Plamp asserts there is also testimony that Thiesse had made other complaints about Tate to a high school principal.  Plamp identifies testimony from student Ellis and teachers Budahl and Olson.  Plamp has not produced evidence from Thiesse herself that she had complained to a principal about other matters than the three undisputed incidents.  The testimony from student Ellis and teacher Budahl that counselor Thiesse had told them that she (Thiesse) had complained to a principal on other occasions about Tate is hearsay evidence which is not admissible at trial.  Likewise, the testimony of teacher Olson about student comments about Tate which occurred during his classroom sessions are not relevant and are hearsay.  Finally, Olson's testimony about co-teacher Krcil avoiding Tate is not relevant and is hearsay.[1]

---

[1]Student Ellis testified Thiesse told Ellis that she had notified Principal Aslesen of complaints about Tate similar to Ellis' complaint.  According to student Ellis, Thiesse said that "Aslesen would not do anything because Tate was a respected coach."  Co-teacher Budahl testified Thiesse told him that she had told Principal Palli several times about Tate's classroom behavior and that Tate looked down the blouses of female students.  According to Budahl, Palli did nothing.

Plamp asserts the testimony of co-teacher Olson substantiates the rumors about Tate looking down the shirts of females and talking about sexual matters during class.  Olson heard students say those things about Tate.  Co-teacher Krcil is reported to have heard Tate make

Budahl testified that since 1986 he has not been instructed what to do if a teacher molests a student. He has not heard training about teacher on student molestation.

Plamp asserts the Title IX coordinator has attended sexual harassment training herself, but has not been asked to provide similar training to other staff. Plamp cites other evidence about the absence of sexual harassment training for District staff. Assistant principal Mock testified about the lack of sexual harassment training for students.

Principal Palli testified she has never received a complaint from a student involving sexual harassment by teacher. District policy requires any substantiated complaint to be placed in the file of faculty, staff, or student. Policy also provides all reported uncomfortable situations will be investigated.

Plamp has expert opinion that the sexual harassment training and education of District's students was inadequate because students are not instructed how to deal with sexual harassment by a teacher or other staff. Plamp's expert will opine that failure to document allegations can reduce the ability of school districts to recognize patterns of conduct. Plamp's expert believes the District's failure to document complaints about Tate prevented earlier identification of a

---

comments about sex and sexual behavior to her to the extent that she avoided conversations with Tate. Teacher Mark Budahl reported that a co-teacher told Budahl that a student said to the co-teacher that Tate is a pervert. Mark Budahl testified that counselor Thiesse discussed with principal Palli several times that girls had complained to her about Tate's behavior in his classroom and how he looked down their blouses. Budahl testified his own daughter complained to him about sexually inappropriate comments Tate made to her. He confronted Tate, but did not report to school administrators. Budahl's daughter told her mother that a bunch of girls had gone to school counselor Thiesse to tell her that Tate was saying sexual things to her. Mark Budahl testified that Thiesse told him in August, 2006, that she had told Palli about several instances of girls complaining about Tate's behavior in his room. Mark Budahl also testified that counselor Thiesse told Palli several times that Tate looks down the blouses of female students, made comments to the girls, and rubs the girls' shoulders and they do not like it.

8

pattern of conduct by Tate.

**3.     SUMMARY JUDGMENT STANDARD.**

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter law.  To avoid summary judgment as a matter of law, the non-movant must make a sufficient showing on every essential element of its claim on which it bears the burden of proof.  We look to the substantive law to determine whether an element is essential to a case, and only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. . . . . [T]he nonmoving party is entitled to all reasonable inferences-those that can be drawn from the evidence without resort to speculation."P.H. v. The School District of Kansas City, Missouri, 265 F.3d 653, 658 (8th Cir. 2001) (internal citations and quotation marks omitted).

**4.     DEFENDANT'S ARGUMENTS.**

**(a)     Title IX.**

District contends a school official with the authority to address the complained-of conduct and to take corrective measures did not have actual knowledge of the harassing behavior. District further contends that once a school district administrator had actual knowledge of **"the"** discriminatory behavior, his conduct was reasonable.  Liability of a school district for a teacher's sexual harassment of a student must be the result of an official decision not to remedy the violation, District argues.  That is, a school district's inadequate response to harassing behavior must amount to deliberate indifference of discrimination before liability can attach.  District urges **"the"** discriminatory behavior must be the specific sexual harassment of Tate upon Plamp,

as distinguished from other complaints about him regarding other conduct or other students.

      (b)    § 1983.

District points out that Plamp's allegations are for discrimination by sexual harassment as distinguished from sexual abuse. District observes that all touching is not sexual abuse and that Tate's alleged touching falls short of the statutory definition of sexual abuse in SDCL 22-22-7.1. "A substantive due process violation must be something more than an ordinary tort to be actionable under section 1983," District argues. District contends "[w]here there is no violation of Plaintiff's rights under the Constitution, there can be no liability under Section 1983. Because Plaintiff has failed to produce evidence that she suffered a deprivation of a constitutional right, the Court need not determine whether these alleged deprivations resulted from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the District."

      (c)    **Battery.**

District contends "Tate's sexual harassment and battery of Plaintiff, if any, was not committed within the scope of his employment, as it was outrageous and unforeseeable by District." Agency rules creating vicarious liability, therefore, do not apply, according to District.

     **5.**    **PLAINTIFF'S ARGUMENTS**

      (a).    **Title IX.**

Plamp contends District had actual knowledge "of Tate's propensities to sexually harass and discriminate against female students." She urges the "actual knowledge" element need not be actual knowledge of the specific incidents of Tate's acts involving her, but that the "actual knowledge element" can be satisfied by showing the District possessed actual knowledge of

10

Tate's other sexual harassing and discriminatory conduct.  She urges the standard is "actual knowledge of discrimination in the recipient's programs."  Plamp identifies: (1) an incident in the early to mid 1990s in which a male complained that Tate's conduct was interfering with his relationship with his fiancé, (2) two incidents in which female students complained of being uncomfortable in Tate's classroom.  Plamp seeks "to hold District liable for its own decisions to, time and again,  trivialize complaints about Tate's behavior toward female students by not documenting and not investigating reported incidents, as required by its sexual harassment policy, and thereby to remain idle in the face of known harassment in its high school."

> ### (b).    § 1983.

Plamp contends sexual harassment by state actors violates the Fourteenth Amendment and establishes a § 1983 action.  Second, Tate's behavior, according to Plamp, constituted an unreasonable bodily intrusion upon her liberty interest in her bodily integrity.  Plamp also contends District's custom of failing to receive, investigate and act upon complaints of gender discrimination by Tate.  Third, Plamp contends District was on notice that its training procedures about teacher on student sexual harassment were inadequate because (1) the failure to train is so likely to result in a violation of constitutional rights that the need for training is obvious and (2) a pattern of constitutional violations put the District on notice that its employees' responses to a regularly recurring situation were insufficient to protect the constitutional rights of its students.  Her expert will express the opinion that "the training was woefully inadequate."

> ### (c).    Battery.

Plamp contends Tate was acting within the scope of his employment when he intentionally and physically touched her in an offensive manner.  Tate was within the scope of his

employment, according to plaintiff, because his employment put him in the position where his

harmful conduct was not so unusual or startling that it would be unfair to include the loss caused

by the injury among the costs of the employer's business.

### 6.    TITLE IX ANALYSIS

Title IX provides in pertinent part:

> No person . . . shall, on the basis of sex, be excluded from participation in, be
> denied the benefits of, or be subjected to discrimination under any education
> program or activity receiving federal financial assistance.

20 U.S.C. 1681(a).

A private right of action is judicially implied. Gebser v. Lago Vista Independent School

District, 524 U.S. 274, 283-284, 118 S.Ct. 1989, 1996 (1998) ". . . [A] damages remedy will not

lie under Title IX unless an official who at a minimum has authority to address the alleged

discrimination and to institute corrective measures on the recipient's behalf has actual knowledge

of discrimination in the recipient's programs and fails adequately to respond."   Actual

knowledge or notice means "notice to an appropriate person."  "An appropriate person under §

1682 is, at a minimum, an official of the recipient entity with authority to take corrective action

to end the discrimination." Gebser,  524 U.S. 290, 118 S.Ct. 1996.  Recovery against a school

district under Title IX cannot be based on the theories of *respondeat superior* or constructive

notice. Gebser at 524 U.S. 285, 118 S.Ct. 1997.  Recipients of federal money can be liable in

damages only for their own deliberate indifference which causes discrimination. Davis v. Monroe

County Board of Education, 526 U.S. 629, 640-643, 119 S.Ct. 1661, 1670-1671 (1999).  "Title

IX unquestionably . . . placed on [the Board] the duty not to permit teacher-student harassment in

its schools and recipients violate Title IX's plain terms when they remain deliberately indifferent

12

to this form of misconduct." <u>Davis</u>, 526 U.S. 629, 643, 119 S.Ct. 1661, 1670 (internal citation omitted). "The harassment must take place in a context subject to the school district's control." <u>Davis</u>, 526 U.S. 629, 645, 119 S.Ct. 1661, 1672. These factors combine to limit a recipient's liability for damages to circumstances over which it exercises substantial control over both the harasser and the context in which the harassment occurs. <u>Davis</u>, 526 U.S. 629, 645, 119 S.Ct. 1661, 1672. When a teacher sexually harasses a student because of the student's gender, that teacher discriminates on the basis of sex. <u>Gebser</u>, 524 U.S. 281, 118 S.Ct. 1995. "In an appropriate case, there is no reason why courts, on a motion . . . for summary judgment, could not identify a response as not clearly unreasonable as a matter of law."<u>Davis</u>, 526 U.S. 629, 649, 119 S.Ct. 1661, 1674.

Dr. Graves response as a matter of law was clearly not unreasonable. As soon as he received knowledge on May 9, 2006, of Tate's conduct he advised Mrs. Plamp of her options. Mrs. Plamp indicated a preference for the option to contact law enforcement. Dr. Graves called the police as soon as his telephone conversation with Mrs. Plamp ended to ensure that the police were on notice to expect contact from her. He instructed District employees to wait for Tate's return to the school with the golf team to ensure Tate's contact with students ended. He went to the police station to watch and listen to the police interview of Tate. Immediately following the police interview, he suspended Tate from his teaching duties. He immediately ensured that Tate was accompanied by police and school personnel to the school to gather his personal effects. He told Tate there was no chance of his being retained as an employee. He reasonably reacted to ensure that teacher-student discrimination as a result of sexual harassment would stop. Dr. Graves conduct was clearly not unreasonable. Plamp has no claim against the District under

13

Title IX as a result of the conduct of Dr. Graves which can survive summary judgment.

Principals Asleson and Palli are persons who had authority to address Tate's alleged discrimination and to institute corrective measures on behalf of the District. Plamp has presented sufficient evidence to use at trial to try to persuade a jury that one or both possessed actual knowledge of discrimination in the District's programs and failed to adequately respond. There is the 1994 complaint from the anonymous young man. There are the two separate complaints from female students who were uncomfortable in Tate's classroom. This evidence is for a jury to consider to decide whether District possessed actual knowledge of discriminatory conduct by sexual harassment of female students by Tate and, if so, whether the District made an effort to either investigate or put an end to his alleged discrimination.

P.H. v. School District of Kansas City, Missouri is different from Plamp's case in that there was no actual knowledge by the Kansas City School District of the teacher's sexual harassment of a student until after the fact. P.H. v. The School District of Kansas City, 265 F.3d 653 (8th Cir. 2001). While the Mitchell School District did not possess actual knowledge about Tate's allegedly harassing conduct with Plamp herself until after the fact, the District's high school principals allegedly had previously received information about Tate's allegedly discriminatory behavior regarding other female students. P.H. also stands for the proposition that the 1994 complaint about Tate could be too remote. Standing alone, that complaint about Tate is arguably too remote. See P.H. at 662 where an approximately twenty year old complaint was too remote—1978 to the "late 1990's. The remoteness of the 1994 complaint is overcome when it is considered together with the other more recent evidence about Tate's allegedly discriminatory conduct. Plamp survives summary judgment on her Title IX claim. District's motion for

14

summary judgment on the Title IX claim is DENIED.

7.    § 1983 ANALYSIS

"Sexual harassment by state actors violate[s] the Fourteenth Amendment and establishes a

section 1983 action. Wright v. Rolette County, 417 F.3d 879, 884 (8th Cir. 2005)(internal citations

and quotation marks omitted).  Sexist verbal comments without touching can be sexual

harassment under section 1983. Wright at 885.  "It is well settled that the Due Process Clause of

the Fourteenth Amendment protects the liberty interest of a child in public school from sexual

abuse." P.H. v. School District of Kansas City, Missouri, 265 F.3d 653, 658.  District contends

Tate's touching did not constitute sexual abuse of Plamp as that phrase is defined by SDCL 22-

22-7.1 for criminal purposes.  P.H. is a case which would qualify as sexual abuse as that phrase is

defined under South Dakota criminal statutes.  Federal law and Eighth Circuit precedent govern.

The phrase "sexual abuse" for purposes of a lawsuit pursuant to 42 U.S.C. § 1983 for teacher-

student sexual abuse includes fondling, looking up a dress, and inappropriate touching. Thelma D.

v. Board of Education of the City of St. Louis, 934 F.2d 929, 931 (8th Cir. 1991).

(1).    Custom of Failing to Receive, Investigate and Act Upon Complaints of Gender
         Discrimination.

The elements essential to establish a § 1983 custom claim against a local governmental

entity are:

> (1) The existence of a continuing, widespread, persistent pattern of
> unconstitutional misconduct by the governmental entity's employees;
> (2) Deliberate indifference to or tacit authorization of such conduct by the
> governmental entity's policymaking officials after notice to the officials of that
> misconduct; and
> (3) That plaintiff was injured by acts pursuant to the governmental entity's custom,
> i.e., that the custom was a moving force behind the constitutional violation.

15

Thelma D. at 932-933.

Five complaints scattered over 16 years in a St. Louis school district of over 4,000 students cannot, as a matter of law, be said to comprise a persistent and widespread pattern of unconstitutional misconduct. Thelma D. at 833. By comparison in the Mitchell School District there exists evidence of three complaints about Tate's behavior of which principals Asleson and Palli were aware. Two of the complaints were from female students who felt uncomfortable in Tate's class as a result of his teaching method when describing rapes during lectures about historical events. The third complaint occurred in 1994, about twelve years before the Plamp incident. The three complaints occurred in 1994, the 2002-2003 school year and the 2004-2005 school year. That the three complaints occurred is not disputed. There is not enough evidence to establish the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct in the Mitchell School District to permit the § 1983 custom claim to survive summary judgment.

Additionally, although the lack of a widespread pattern of unconstitutional misconduct ends the inquiry, as it did in Thelma D., there is no evidence that the Mitchell School Board had notice of Tate's or anyone else's misconduct.[2] There is no evidence that anyone other than the School Board has final policymaking authority. South Dakota law provides the School Board is the governing body for the District and therefore the policymaking voice. SDCL 13-8-1, 13-8-39. Nor is there any evidence that Superintendent Graves had knowledge of any of these incidents or

_____

[2]The after the fact e-mail apparently authored by school board member Christensen is not sufficient to establish the required notice. Among other reasons, the e-mail was written on February 18, 2007, after the Plamp incident before he became a member of the school board on July 9, 2007. He wrote "the Plamps have a case."

16

comments until May 11, 2006.  The Eighth Circuit has said that knowledge by lower level school system officials is not sufficient to impute constructive knowledge to the Board.  Thelma D. at 933.  Like Thelma D., imputing the knowledge of lower level school system employees to the Board of Education "would, in effect, sanction *de facto respondeat superior* liability, a result which the Supreme Court expressly rejected in *Monell*. 436 U.S. at 693-94, 98 S.Ct. At 2037-38." Thelma D. at 934.  Without notice of prior incidents, the Mitchell School Board— the policymaker for the District— cannot be said to have shown deliberate indifference toward Tate's misconduct.  District is entitled to summary judgment against Plamp on her § 1983 claim that District had a custom of failing to receive, investigate and act upon complaints of unconstitutional misconduct.  District's motion is GRANTED as to the §1983 custom claim.

### (2).    Training.

To survive summary judgment on her training claim Plamp must establish the School Board had notice that it procedures were inadequate and likely to result in a violation of constitutional rights.  Thelma D. at 934.  There are two methods to prove notice: (1) the need for training is patently obvious or (2) there exists a pattern of constitutional violations which would put the public entity on notice that its employees' responses to a regularly recurring situation are insufficient to protect the constitutional rights of its citizens.  Thelma D. at 934-935.   Like the School Board in Thelma D., the Mitchell School District has developed and implemented policies and procedures for handling complaints of sexual abuse.  There is a sexual harassment policy. There is a student grievance procedure policy.  These sexual harassment policies have been in effect since 1993.  They were revised in 1994, 1998, and 2000.  They were reviewed in 2000 and 2003.  The District's policies have been reviewed in comparison to the policies recommended by

the Associated School Boards of South Dakota and found to be almost identical. There are both informal and formal methods for handling complaints. The child abuse and sexual harassment policies are posted in the administrative offices of each building and the staff lounge. Handbooks containing these policies are distributed to staff and students. Staff has participated in many workshops about harassment, child abuse and reporting requirements. Like the School Board in Thelma D., the Mitchell School District implemented various programs to instruct principals on the reporting laws and procedures, and to train school employees in detecting and investigating incidents of child abuse. Like the School Board in Thelma D., the Mitchell School District's sensitivity to the constitutional rights of its students as they relate to incidents of child abuse is further reflected in its attempts to increase awareness among its students through instructional programs. Like the plaintiffs in Thelma D., Plamp has testimony that an employee never received training. "However, the Supreme Court has counseled that the fact that a particular [employee] may be unsatisfactorily trained will not alone suffice to fasten liability on the [governmental entity]." Id. (brackets in original)(internal quotation marks and citation omitted).

The second way to prove a failure to train claim is to show the School Board possessed either actual or constructive notice of the inadequacies of its training program and failed to take remedial steps. Like Thelma D., there is no evidence that either Superintendent Graves or the Mitchell School Board had notice of any inadequacy in its child abuse training programs and procedures. There is no evidence of prior complaints of child abuse in the Mitchell School District. The evidence is that neither the Superintendent nor School Board knew of Tate's behavior until May 11, 2006. Upon learning of the Plamp incident Superintendent Graves acted immediately to end Tate's contact with students and to remove him from his teaching position.

18

Like <u>Thelma D.</u>, "without any evidence of Board notice of possible shortcomings in its child abuse training programs and procedures" it must be concluded as a matter of law that the District has not acted with deliberate indifference toward its training of staff about child abuse.  District's motion for summary judgement on the §1983 failure to train claim is GRANTED.

### 8.   BATTERY ANALYSIS

The issue is whether District can be vicariously liable for Tate's battery of Plamp.  A concise analysis of this issue and collection of pertinent case law from South Dakota appears in <u>Red Elk v. United States</u>, 62 F.3d 1102 (8th Cir. 1995).  In essence District argues Tate's conduct was his own personal frolic, so the battery could not possibly be within the scope of his employment.  As observed in <u>Red Elk</u>, "it is not that simple to resolve the issue. . . under the law of South Dakota." <u>Red Elk</u> at 1105.  After collecting and reviewing pertinent South Dakota cases <u>Red Elk</u> states that vicarious liability will be imposed upon the employer when the nexus is sufficient to make the resulting harm foreseeable.  The nexus for Tate's alleged battery of Plamp is obvious.  His employment with the District was the connection between teacher Tate and student Plamp.  The alleged battery occurred in a classroom during a time when both teachers and students could be expected to be in the school building.  Unfortunately, occasional incidents of sexual misconduct between teacher and student can be foreseeable.

Under South Dakota law:

- an owner of a farm can be vicariously liable for his agent's assault, <u>Skow v. Steele</u>, 49 N.W.2d 24, 26 (S.D. 1951);

- a ranch owner can be vicariously liable to the mistaken target of his agent hunting guide for being shot with a gun, <u>Deuchar v. Foland Ranch, Inc.</u>, 410 N.W.2d 177( S.D. 1987);

- a bank can be vicariously liable to its customer for the embezzlement of its agent, <u>Olson v. Tri-County Bank</u>,456 N.W.2d 132, 133 (S.D. 1990);

- the employer of a stock broker can be vicariously liable to its customer for the fraud of its employee stock broker, <u>Davis v. Merrill Lynch</u>, 906 F.2d 1206 (8th Cir. 1990);

- the United States can be vicariously liable for the rape of a minor by an off duty tribal police officer, <u>Red Elk</u>, 62 F.3d 1102;

- a juvenile treatment facility can be vicariously liable for the sexual assaults of its employee counselor upon juvenile residents of the facility, <u>Brown v. Youth Services International of South Dakota, Inc.</u>, 89 F.Supp.2d 1095 (2000).

Under South Dakota law there is a sufficient nexus between a teacher's employment and a teacher's battery of a student to make the harm foreseeable and thus to render a school district vicariously liable to the student victim of the teacher's battery. The ultimate liability of District for Tate's alleged battery upon Plamp is for a jury to decide. District's motion for summary judgment against Plamp on her claim for battery is DENIED.

## CONCLUSION

### 1.    DISTRICT'S MOTION FOR SUMMARY JUDGMENT (DOC. 149)

Under Plamp's Title IX theory of liability, the District's principals, persons who had the authority and allegedly the information, allegedly failed to investigate or to end Tate's alleged misconduct. Plamp has raised sufficient issues of material fact about the ultimate fact of discrimination under Title IX, about notice to the principals and about their responses. Under Plamp's battery theory of liability the District can be vicariously liable for Tate's battery. Plamp has raised sufficient issues of material fact about the occurrence of a battery and about the ability

20

of the District to foresee Tate's conduct regarding Plamp. District's motion for summary judgment against Plamp on her theories of liability under Title IX and battery are DENIED.

Plamp's theory of liability under 42 U.S.C. § 1983 does not survive District's motion for summary judgment. District can be liable under § 1983 if there is a custom of gender discrimination or if its training procedures were inadequate. To survive summary judgment on a custom claim, a plaintiff must establish the existence of a continuing, widespread persistent pattern of unconstitutional misconduct of its employees, that the local entity had notice, and that the entity tacitly authorized or acted with deliberate indifference toward the misconduct. That the Plamp incident occurred is not in dispute. Touching her inappropriately would constitute an unconstitutional intrusion of her liberty interest under the Fourteenth Amendment. There is no evidence, however, the Superintendent or the School Board had notice of a continuing, widespread persistent pattern of unconstitutional misconduct by its employees. There is no evidence the Superintendent or the School Board were deliberately indifferent to or tacitly authorized unconstitutional misconduct by its employees. District may not be deliberately indifferent to or tacitly authorize conduct of which it was not aware. To survive summary judgment on an inadequate training claim, a plaintiff must establish the School Board had notice that its procedures were inadequate and likely to result in a violation of constitutional rights. There is no indication in the record that the Mitchell School District had notice either that its policies or that its training of staff and students was inadequate to prevent violations of constitutional rights. District's motion for summary judgment on Plamp's § 1983 custom and training claims is GRANTED.

21

## 2.   TATE'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 140)

Tate moved for partial summary judgment on District's Third Party Complaint seeking contribution among joint tortfeasors pursuant to SDCL 15-8-11. This motion relates only to Plamp's Title IX claim. District sued Tate alleging that Tate should be liable to District for Tate's proportionate share of liability to Plamp, if the District is liable at all. District's theory is that it can be liable to Plamp only as a result of Tate's misconduct toward Plamp. District argues, therefore, that Tate should be liable to District if District is found liable to Plamp.

Tate correctly argues that he cannot be liable to District as a joint tortfeasor under SDCL 15-8-11 unless Plamp could recover directly from Tate. Burmeister v. Younstrom, 139 NW2d 226, 231 (SD 1965). Plamp cannot recover from Tate under Title IX. Kinman v. Omaha Public School District, 171 F.3d 607, 610-611 (8th Cir. 1999). District is liable under Title IX, if at all, only for its own conduct. Recovery against a school district under Title IX cannot be based on the theories of *respondeat superior* or constructive notice. Gebser at 524 U.S. 285, 118 S.Ct. 1997. Recipients of federal money can be liable in damages only for their own deliberate indifference which causes discrimination. Davis v. Monroe County Board of Education, 526 U.S. 629, 640-643, 119 S.Ct. 1661, 1670-1671. Tate is entitled as a matter of law to partial summary judgment dismissing District's third party complaint for contribution regarding the Title IX claim. Tate's motion (Doc. 140) is GRANTED.

District's third party complaint asks generally for contribution from Tate without specifying whether District requests contribution on all three of Plamp's theories of recovery or only on one or two. District has been granted summary judgment on Plamp's § 1983 claim, so District's claim for contribution from Tate on that claim is moot. District's third party claims of

22

failure to report, failure to comply with policy, and employment misconduct are in reality asserted theories of recovery for contribution, as is made evident by District's prayer for relief for contribution. While District's third party complaint does not specifically say that District is seeking contribution on Plamp's battery claim, Tate represented that his motion for partial summary judgment relates only to Plamp's Title IX claim. District's claim for contribution on the battery claim, therefore, remains.

### 3.       DISTRICT'S MOTION FOR HEARING (DOCS. 143 & 183)

District challenges Plamp's claim for punitive damages and Plamp's expert witness testimony. The parties agreed the Motion for Hearing as it applies to plaintiff's expert is a Daubert challenge. Plamp advised the court by e-mail following the pretrial conference that she intended to use her expert testimony only with reference to the claim under 42 U.S.C. § 1983. The § 1983 claim will be dismissed. District's motion challenging Plamp's expert testimony is DENIED AS MOOT.

Regarding punitive damages, Title IX has been construed as not authorizing punitive damages. Doe v. Omaha Public School District, 2005 WL2347284 (D. Neb); Schultzen v. Woodbury Central Community School District, 187 F.Supp.2d 1099 (D. Ia. 2002). District's motion for summary judgment on Plamp's punitive damage claim under Title IX is GRANTED.

Plaintiff's punitive damages claim associated with her battery claim is a state law claim. The state law procedure regarding a claim for punitive damages applies. SDCL 21-1-4.1. There has been no attempt by plaintiff to comply with this procedure, irrespective of the issue about a city being liable for punitive damages. See City of Mitchell v. Beauregaard, 430 N.W. 2d 704 (S.D. 1988). District's motion for summary judgment on Plamp's punitive damage claim under

23

her battery theory is GRANTED without prejudice to the plaintiff to attempt to comply with SDCL 21-1-4.1.

### 4.     DISTRICT'S MOTION REGARDING *IN CAMERA* REVIEW OF STATEMENTS (DOC. 147)

District requests an *in camera* review of "all reports and notes of interviews performed on behalf of Plaintiff." At the pretrial conference Plamp's counsel represented that there are no statements signed by witnesses. At issue are notes of interviews prepared by counsel for plaintiff and prepared by an investigator hired by plaintiff. District also complains that the interviews by counsel were of employees of the District and should not have been conducted.

Notes of counsel prepared in relation to litigation for which counsel has been retained are work product and not discoverable. Baker v. General Motors Corporation, 209 F.3d 1051, 1054 (8th Cir. 2000). The notes of plaintiff's investigator are also protected from discovery. United States v. Noble, 422 U.S. 225, 238-239, 95 S.Ct. 2160, 2170 (1975). Regarding interviews of District employees, interviews of employees who are "mere witnesses to an event for which the organization is sued are permitted." Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc., 144 F.Supp.2d 1147, 1156 (D. S.D. 2001). District's motion for an *in camera* review and for production of notes prepared by plaintiff's counsel or investigator in preparation for litigation or trial is DENIED.

### ORDER

Now, Therefore, IT IS ORDERED:

1.     Andrew Tate's Motion for Partial Summary Judgment (Doc. 140) is GRANTED as to the Title IX claim.

2.    Mitchell School District's Motion for Hearing (Docs. 143 & 183) is DENIED AS MOOT as to plaintiff's expert testimony and is GRANTED as to punitive damages.

3.    Mitchell School District's Motion for *in camera* review and production of notes (Doc. 147) is DENIED.

4.    Mitchell School District's Motion for Summary Judgment (Doc. 149) is GRANTED as to plaintiff's claim pursuant to 42 U.S.C. § 1983 and DENIED as to plaintiff's Title IX claim and as to plaintiff's battery claim.

Dated this __3__ day of June, 2008.

BY THE COURT:

John E. Simko
United States Magistrate Judge

ATTEST:

JOSEPH HAAS, Clerk

By_____, Deputy

25